### LEGGETT & PLATT SPRING BED CO. v. CROOKS, Collector of Internal Revenue.

District Court, W. D. Missouri, S. W. D. June 17, 1929.

No. 461.

Geo. B. Lang (of Lang & Son), of Joplin, Mo., and Howard Gray, of Carthage, Mo., for plaintiff.

C. M. Charest, Gen. Counsel, Int. Revenue, and Geo. A. Mathers, Sp. Atty., Int. Revenue, both of Washington, D. C., and Roscoe C. Patterson, U. S. Dist. Atty., and Wm. L. Vandeventer, Asst. U. S. Dist. Atty., both of Kansas City, Mo., for defendant.

OTIS, District Judge. ■ In this case the plaintiff seeks to recover, with interest, a total of $17,170.25 from the defendant. That amount is the aggregate of alleged overpayments of income and excess profit taxes for the years 1919, 1920, 1921, 1922, and 1923. The theory is that plaintiff was entitled in each of these years to a deduction from its gross income, equal to the amount of depreciation in the value of the patents owned by it. The defendant concedes that the theory asserted by the plaintiff is right, and that plaintiff is entitled to recover from the defendant as to each of the years in question, if it has proved that there was any depreciation in the value of the patents owned by it during these years. The defense is that no depreciation has been proved, because no value of patents has been proved with respect to which there could have been depreciation. Other defenses were asserted in the amended answer, but they were not pressed at the trial of the case, in the oral argument, or in the brief filed by the defendant. Such other defenses must be considered as having been abandoned.

■ The plaintiff had the right in each of the years involved to deduct from its gross income the depreciation in each' year in the value of its patent. Section 214(a)(8), Revenue Act 1918 (40 Stat. 1067); section 234 (a)(7), Revenue ¡Act 1921 (42 Stat. 255). The burden was on the plaintiff to prove by the preponderance or the greater weight of the credible testimony in the case that there was such depreciation. The life of a patent is 17 years. Its value, then, is lessened with the passing of each year by one-seventeenth, assuming no factors other than lapse of time have affected that value. It is a simple matter to determine the depreciation in the value of a patent in a given year, if it is still a live patent, and if its value has been established, either as of the beginning of that year or as of some fixed point of time prior thereto.

■ Has the plaintiff proved that it owned patents in 1919, that they were of value, and what that value was? These things it must have proved to be entitled to recover. Without establishing such a basis for calculating depreciation, the amount of depreciation could not well be shown.

■ In the testimony offered by the plaintiff in support of its cause of action, certain patents were referred to as acquired in 1901. They were patent No. 553,412, dated January 21, 1896; patent No. 434,794, dated August 19, 1890; patent No. 611,131, dated September 20, 1898; patent No. 611,132, dated September 20, 1898; and patent No. 656,411, dated August 21, 1900. For these patents plaintiff paid approximately $75,000 in cash. Each of them had expired by limitation, and was, therefore, of no value before the year 1919. As to them, then, there could be no depreciation to which the plaintiff was entitled

in 1919 and the years succeeding that year.

At the time of the purchase by the plaintiff of the patents just mentioned and as a part of the consideration for which $75,000 was paid, plaintiff acquired, also, all patents which thereafter the patentee might obtain as improvements in the inventions covered in the patents named. Thereby it acquired patent No. 1,089,233 and patent No. 1,094,076, which last patents were issued, respectively, March 3, 1914, and April 21, 1914. These patents, of course, had not expired by limitation during any of the years 1919 to 1923, inclusive. If as to them the plaintiff has proved value, then as to them it is entitled to claim depreciation and recover in this case. But as to them there is in the record no proof whatever showing value.

Certainly nothing definite as to their value can be determined from what was paid for the earlier patents, of which there were improvements, and certainly nothing definite as to their value can be determined from the evidence to which the plaintiff in its brief points out in this connection, to wit, that $115,000 was paid in 1909 for the same patent rights (and other property) in that part of the United States east of the Mississippi river even if the evidence is construed as showing that amount was paid for the patent rights and other property. There is nothing to show what part of this amount was for patent rights.

As to all of the patents thus far mentioned, then, the conclusion must be that no value has been proved for the years involved in this case. Doubtless the two patents last mentioned, improvements upon the patents first acquired, did have value in those years, and therefore did depreciate in value; but what that value was, and what, therefore, was the amount of depreciation in value, cannot even be guessed at from the record. Certainly the showing falls far short of that degree of proof which the law requires.

I come next to a patent claimed to have been acquired by the plaintiff in 1909. That is patent No. 887,664, which was issued May 12, 1908, and which, therefore, did not expire until May 12, 1925. The contention of the plaintiff is that the record shows that $150,000 was paid by the plaintiff for this patent, and that it was paid in stock of the plaintiff of the value of $150,000. Unfortunately for the plaintiff, the record does not support, except in a most unsatisfactory and insufficient manner, this contention. In certain testimony it was stated that $150,000 in stock was given for this patent, but the books of the plaintiff do not record the transaction as of that character and give no support to that testimony. Stock was issued in the amount named, but it was issued to the stockholders of the plaintiff. That the stock issued or the proceeds thereof ever were given in consideration for the patent is not clearly established by anything in the record. Whether anything in the record, other than this insufficient showing, establishes the value of this patent, remains for consideration.

Still other patent rights are asserted by the plaintiff to have been owned by it during the years involved, but as to them, also, there is nothing in the record from which their cost can be determined with any degree of certainty. They are said to have been acquired for $115,000 from the McElroy-Shannon Spring Bed Manufacturing Company through one W. W. Bailey. A bill of sale from that company to Bailey was introduced in evidence, and also a bill of sale from Bailey to the plaintiff; the first bill of sale showing a consideration of $40,000, and the second of $115,000, the consideration in each case being for the same subject-matter, to wit, the patents asserted in this connection and other property—buildings, machinery, tools, appliances, manufactured goods, goods in process of manufacture, raw material, leases, all factory sites, good will, etc. What value was placed on the patents involved cannot even be guessed at from these bills of sale. The cost, then, of the patents purchased from the McElroy-Shannon Company was not shown, nor is there in the record any other proof from which their value can be found.

Substantially all the testimony offered by the plaintiff was that of one witness, Mr. C. B. Platt, at the time of the trial an elderly gentleman, who was one of the organizers of the company, was its vice president during a long period, and thereafter president. From his conduct and demeanor on the witness stand, and from his general appearance and the manner of his testifying, no other conclusion was possible than that he was an honorable and upright man, having no desire other than to tell the truth as he understood it. I was convinced that his testimony as to important facts was true, although clearly his recollection was hazy as to details. While his testimony that for the patent acquired in 1909 from Mr. Leggett, patent No. 887,664, $150,000 in company stock was given, was not clear as to the method in which the value of that stock reached Mr. Leggett, it convinced me of the fact that in some way that value was given for the patent, and that after the transaction the company owned and used the patent, and Mr. Leggett no longer claimed

any interest therein. In addition to this testimony as to the acquisition of the patent, by itself scarcely sufficient to sustain plaintiff's right to recover, Mr. Platt also testified that on March 1, 1913, the patent was of the value of $150,000. He testified further, again with some uncertainty as to details, that the patent enabled the company to increase its earning capacity in annual amount which might be capitalized at approximately $150,000. The defendant offered no testimony disputing the claim that the company during the years involved here did own patent No. 887,664, or that it was of the value claimed for it by the plaintiff as of March 1, 1913.

From all of the evidence I think the inference is justified that the company did own this patent, and that it was of the value claimed. If so, then the plaintiff was entitled to deduct from its gross income during each of the years in question the depreciation in the value of this patent. It is entitled now to recover from the defendant the amounts paid by it, to the extent that they were calculated upon the gross income of the plaintiff without the allowances for the depreciation it was entitled to claim.

I make the following findings of fact and conclusion of law:

I. During each of the years 1919, 1920, 1921, 1922, and 1923 plaintiff was the owner of patent No. 887,664, which patent it acquired in 1909, and which did not expire until after the year 1923. The value of the patent on March 1, 1913, was $150,000.

II. Notwithstanding the plaintiff, during the years 1919, 1920, 1921, 1922, and 1923, owned patent No. 887,664, and was entitled to be allowed in the determination of its gross income in each of said years depreciation in the value of this patent, it did not at the time of making out its tax returns for said years claim such depreciation, and was not in the assessment of its tax for said years allowed such depreciation, and has not since been allowed any refund from the defendant by reason of such depreciation.

III. From the facts found, I conclude as a matter of law that the plaintiff is now entitled to recover from the defendant, for each of the years 1919, 1920, 1921, 1922, and 1923, such an amount collected from it in taxes as was based upon an inclusion in its gross income in each year of one-seventeenth of $150,000.

A form of decree in accordance with this memorandum, and with the findings of fact and conclusions of law herein stated, may be prepared and submitted to the court for approval and entry.