## FIRST NAT. BANK OF OMAHA v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8982.

Circuit Court of Appeals, Eighth Circuit.

April 13, 1931.

Edward R. Burke, of Omaha, Neb. (Kenneth S. Finlayson, of Omaha, Neb., on the brief), for petitioner.

William Cutler Thompson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. N. Shaw, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and DAVIS, District Judge.

VAN VALKENBURGH, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals. But two questions are involved. The first relates to the determination of a deficiency in tax for 1921, and the second to the determination of a deficiency for 1923.

The Revenue Act of 1921 (42 Stat. 227, 254, 255) provided as follows:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity. * * *

"(5) Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part. * * * "

December 21, 1921, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, promulgated Treasury Decision 3262, which in part provides: "Taxpayers who have, prior to 1921, maintained reserve accounts for bad debts may deduct a reasonable addition to such reserves in lieu of a deduction for specific bad debt items. Taxpayers who have not heretofore maintained such reserve accounts may now elect to do so, and in such case shall proceed to determine the amount of the reserve that should reasonably have been set up as at December 31, 1920 (which shall not be deducted in computing net income) and, in respect of 1921 and subsequent years, may add a reasonable addition to such reserve and deduct the amount in computing taxable net income." This Treasury Decision was incorporated as part of article 155 of Treasury Regulation 62. That article contains additional language as follows: "* * * Where a reserve account is maintained, debts ascertained after December 31, 1920, to be worthless in whole or in part, (a) if such debts were outstanding at December 31, 1920, should be charged against the reserve and may be deducted from income, in accordance with article 151; (b) if such debts arose after December 31, 1920, should be charged against the reserve, and not deducted from income. What constitutes a reasonable addition to a reserve for bad debts must be determined in the light of the facts, and will vary as between classes of business and with conditions of business prosperity."

Prior to the issue of Treasury Decision 3262, supra, it had been the practice of petitioner to charge to profit and loss debts ascertained to be worthless during the year. Accordingly, in December 1921, it had charged in this manner bad debts aggregating $51,993.85. After the issue of this Treasury Decision it decided to change to the reserve method. December 29, 1921, it set up a reserve for bad debts in the sum of $110,000, which represented an additional "estimate of lost and doubtful paper" shown in its bills receivable account for that current year. As its counsel say in their brief, "there was some uncertainty as to the exact procedure to be followed" in making this change of method. The Board of Tax Appeals found that "in its income-tax return for 1921, petitioner deducted from gross income for debts ascertained to be worthless and for the addition to a reserve for bad debts $161,993.85." The Commissioner allowed the deduction of $51,993.85 charged to profit and loss, and disallowed the deduction of $110,000 sought to be set up as a reserve for bad debts.

Upon appeal the Board of Tax Appeals held that the taxpayer was entitled to deduct from gross income a reasonable addition to a reserve for bad debts, reversing the order of the Commissioner in that respect. The Board further held that the taxpayer could not, in the same taxable year, avail itself of both prescribed methods of receiving credit in its income tax return for debts ascertained to be worthless. However, it found that petitioner was entitled to an increase in the amount sought to be set up as an addition to a reserve for bad debts for 1921. In making this increase it had resort to a part of the $51,933.85 previously charged to profit and loss. It said: "Subsequent events showed that the reserve set up was not large enough to cover the amounts determined to be worthless in 1922. The evidence therefore amply supports the contention of the respondent that the $110,000 item was a reasonable amount to set up as a reserve at the close of 1921. We are of the opinion, however, that the evidence warrants an increase in that amount for the purpose of determining a reasonable addition to a reserve for bad debts for 1921. The petitioner charged to undivided profits in 1921 $51,993.85 for debts ascertained to be worthless during that year. Of this amount only $49,466.61 represented amounts included in its bills receivable at December 31, 1920. The balance of $2,527.24 represented bills receivable taken in 1921 which were determined to be worthless prior to the close of the year. Even if the petitioner had set up a proper reserve for bad debts at the close of 1920, it can not be assumed that the petitioner would have foreseen that $2,527.24 of notes received in 1921 would be worthless in that year. If the petitioner had consistently charged debts ascertained to be worthless to a reserve it would have had to add to the reserve in 1921 the $2,527.24. We therefore conclude that a reasonable addition to the reserve to bad debts for 1921 was the amount of $112,527.24. This determination is as we understand it consonant with the decision of the Circuit Court of Appeals in Rhode Island Hospital Trust Co. v. Commissioner, 29

72

F.(2d) 339; Cf. Turl Iron & Car Co. v. Commissioner of Internal Revenue, 9 B. T. A. 740."

The situation presented, then, is this: The Commissioner found that the item of $51,993.85 was properly deducted as a charge to profit and loss for debts ascertained to be worthless and charged off during the year. He disallowed the $110,000 item upon a ground which the Board, we think rightly, declared to be untenable. The Board allowed this $110,000 and increased it by $2,527.24 taken from the $51,993.85. The balance of $49,466.61 was inferentially disallowed, not, it would seem, because it had already been charged off as a specific bad debt item, for the Board was expressly seeking to follow the Circuit Court of Appeals for the First Circuit in Rhode Island Hospital Trust Co. v. Commissioner, 29 F.(2d) 339, 341. An inspection of its quoted language, supra, discloses that its action was taken because it appeared that this balance of $49,466.61 represented amounts included in petitioner's bills receivable on December 31, 1920, while the $2,527.24 allowed represented bills receivable taken in 1921. We are unable to perceive any legal basis for the distinction made. It is beyond dispute that the petitioner was reasonably entitled to credit upon its income tax return for bad debts and lost or doubtful paper of $161,993.85, out of a bills receivable account amounting, December 31, 1921, to $10,681,182.60. The taxpayer insists that, having attempted to change to a reserve for bad debt basis in harmony with the law and Treasury regulations as they were understood to exist at that time, it should be allowed to deduct this sum of $161,993.85 in its income tax return for 1921 on that theory; otherwise, that it should be allowed to take as a deduction all debts ascertained to be worthless in that year whether the same were charged off or not. We think the case falls directly within the reasoning and language of the First Circuit in Rhode Island Hospital Trust Co. v. Commissioner, supra, in which we fully concur: "As already stated, it is now conceded that the tax authorities were correct in ruling that the trust company was not entitled both to deduct the $87,500 above referred to as a bad debt, and also to make an addition of $200,000 to its reserve; but it does not follow that the tax authorities should not have added the $87,500 to the proposed addition to the reserve. Taxpayers' rights are not, under the conditions here involved, to be determined on merely technical grounds. The provision for this reserve first appeared in this act of 1921. The trust company's real rights were not to be destroyed because of its initial failure to put its claim on the technically proper ground, under this new provision." If $51,993.85 be substituted for $87,500, and $110,000 for $200,000, the language quoted applies literally to the case at bar.

The only argument addressed to this conclusion by counsel for appellee is this: "The determination of the Board of Tax Appeals that the petitioner was not entitled to a greater deduction from income than $112,527.24 as a reasonable addition to a reserve for bad debts for 1921 is not reviewable on this appeal."

It is not our purpose to depart from the well-established rule that, where the Board of Tax Appeals has exercised its discretion on legal and reasonable grounds, we may not and should not substitute our discretionary judgment for that of the tax authorities. But here the inconsistency of the distinction made by the Board appears as a legal conclusion from the facts found. It is not sufficient merely to declare a conclusion reasonable. There must be in the facts support for that conclusion. This order of redetermination must be reversed.

Concerning the second question involved in this review the Board of Tax Appeals in its opinion said:

"The remaining issue relates to the deductibility in the year 1923 of an item of $94,807.73, representing an amount paid to the Nebraska National Bank of Omaha. In that year the petitioner took over certain assets and liabilities of the Nebraska National Bank of Omaha and paid to the latter bank the amount in dispute as a bonus. The petitioner contends that the amount is deductible as an expense of the year in which it was paid. It is argued that the expenditure did not result in the acquirement of any capital asset that the petitioner could set up in its books and should therefore be allowed as a deduction; that it might properly be classified as an advertising expense.

"In computing the taxable income of any year a taxpayer is permitted to take only the deductions specified by the statute. The expenditure in question does not come within any of such deductions. Clearly it was not an ordinary and necessary expense of the year 1923. It was paid out in connection with a capital transaction, the purchase of assets and liabilities. The petitioner itself designated the amount as a 'bonus' paid to the liquidated bank. The benefit, if any, re-

sulting to the petitioner was certainly of a capital nature. The fact that the banking laws prohibited the petitioner from including the assets in its capital does not change its character. The disallowance of the deduction by the respondent was not in error."

The allowance of the deduction claimed can be made, if at all, under the provisions of section 234 (a) (1) of the Revenue Act of 1921 above quoted. It appears that in 1923, petitioner, in effect, purchased the business of the Nebraska National Bank of Omaha, Neb., and assumed certain of its liabilities. It allowed to the Nebraska National Bank, which was about to liquidate, a so-called bonus of $94,807.73, for the purpose, it asserts, of securing "favorable contact with the depositors of the liquidating bank." This payment was obviously not an ordinary and necessary expense incurred in carrying on the business of petitioner within the meaning of section 234 of the Revenue Act of 1921. We think the order of the Board with respect to this item should be sustained. The order of redetermination for deficiency in tax for the year 1923 is affirmed; that for the year 1921 is vacated and the case is remanded to the Board of Tax Appeals for further proceedings not inconsistent with this opinion.