**BURNET, Commissioner of Internal Revenue, v. NATIONAL ELECTRIC TICKET REGISTER CO.**

**No. 9070.**

Circuit Court of Appeals, Eighth Circuit.

Jan. 23, 1932.

Norman D. Keller, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for petitioner.

Maurice T. Weinshenk, of Washington, D. C., for respondent.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

VAN VALKENBURGH, Circuit Judge. This is a petition to review a decision of the Board of Tax Appeals reversing that of the Commissioner of Internal Revenue, who disallowed deductions to the taxpayer, respondent herein, for depreciation of patent No. 1,145,818. As found by the Board of Tax Appeals, the respondent is a Missouri corporation with a capital stock of $150,000. It was organized in December, 1912, and in the same month one-half of its stock was issued to W. L. Sullivan, one of its organizers, and later its president, as consideration for the assignment of a pending application for patent for a ticket-vending machine of which Sullivan was the inventor, and in further consideration of an agreement by Sullivan "to turn over to petitioner (respondent herein), without further compensation, all other applications for patents which he might have or thereafter acquire, or inventions which he might thereafter originate or perfect in the line of ticket-vending machines."

It appears, as found, that prior to October 19, 1911, Sullivan was employed by the Temco Manufacturing Company, a corporation, as draftsman and inventor, under a contract of employment that any inventions upon which he worked while in that employ, and on which he should apply for patents within three years after leaving that employment, should belong to the Temco Company. Sullivan left the employ of the Temco Company October 19, 1911. July 29, 1912, within the three-year period, he filed application in the Patent Office for patent on an invention for a ticket-vending machine, which application ripened July 8, 1919, into patent No.

1,308,966. It was this pending application that was expressly made a part of the consideration to Sullivan for the issue to him of $75,000 of stock in the respondent company. However, this application, No. 712,113, fell within the express terms of Sullivan's employment contract with the Temco Company, and, shortly after the incorporation of respondent and its acquisition of this patent application of July 29, 1912, the Temco Company instituted suit in which it claimed ownership of this application. In that suit it was so far successful as to render that application, and the resulting patent, No. 1,308,966, ultimately valueless to respondent. In addition to the controversy respecting title, the invention proved in some material respects defective.

Subsequently to 1912 Sullivan invented a new and improved ticket-vending machine. October 26, 1914, he filed application for patent, which issued July 6, 1915, as patent No. 1,145,818, now under consideration. In the two years following the organization of respondent, $30,000 worth of its stock was sold at par and for cash to outside parties. The remaining $45,000 of stock is held in the treasury of the company and is not for sale. In 1914 Sullivan sold an application which he had filed for a Canadian patent on this latter invention for $3,000 in cash, the proceeds of which, under his agreement, he turned over to respondent. There was testimony before the Board of Tax Appeals that $100,000 would be a moderate estimate of the value of patent No. 1,145,818. It was shown that respondent had built up a profitable business upon the inventions of Sullivan transferred to respondent under the agreement of 1912.

The Board of Tax Appeals, after making the findings of fact substantially as above, found further that "the patent application of October 26, 1914, which resulted in the issuance of patent No. 1,145,818 in 1915, had an actual cash value of at least $75,000.00, when acquired by petitioner in 1914. The $75,000.00 par value stock issued to Sullivan by petitioner in 1912 had a fair market value when issued, on March 1, 1913, and during the year 1914 of $75,000.00." It held accordingly that the Commissioner of Internal Revenue was in error in disallowing the deductions for exhaustion on the basis claimed by respondent herein. We think its conclusion is supported by its findings, and that its findings are sound.

Section 234 (a), Revenue Act of 1921 (c. 136, 42 Stat. 227, 255), provides that, in computing the net income of a corporation subject to the tax imposed by section 230, there shall be allowed as deductions: " * * * (7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. In the case of such property acquired before March 1, 1913, this deduction shall be computed upon the basis of its fair market price or value as of March 1, 1913."

Section 204 (a), Revenue Act of 1924, c. 234, 43 Stat. 253 (26 USCA § 935 (a), provides that "the basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property."

In Leggett & Platt Spring Bed Co. v. Crooks (D. C. Mo.) 34 F.(2d) 492, 493, we find an excellent statement with respect to depreciation permissible in case of patents: "The plaintiff had the right in each of the years involved to deduct from its gross income the depreciation in each year in the value of its patent. * * * The life of a patent is 17 years. Its value, then, is lessened with the passing of each year by one-seventeenth, assuming no factors other than lapse of time have affected that value."

The question presented, as understood by the government, is: "Did the Board of Tax Appeals err in holding that the respondent was entitled to use the amount of $75,000.00 as the basis for depreciation deductions for patent No. 1,145,818?"

It appears that, when Sullivan transferred to respondent patent No. 1,145,818, the latter reassigned, without consideration, to Sullivan the patent application of July 29, 1912. As has been said, the title to this application was then in litigation, and the invention covered thereby had proved defective. The Commissioner, in disallowing the taxpayer's deductions, took the position that the 1912 application (later patent No. 1,308,966), was valueless to respondent, which therefore received nothing for the $75,000 in stock issued to Sullivan, and that the reassignment of that valueless patent to Sullivan was the consideration for the assignment of patent No. 1,-145,818, which, by this process of reasoning, cost the taxpayer nothing. This position is adopted by counsel in their brief, wherein it is urged that the Board of Tax Appeals erred as follows:

"1. In failing to sustain the determination of the Commissioner.

"2. In determining that the basis of the patent upon which depreciation was claimed was $75,000.

"3. In failing to find that the basis for the patent upon which depreciation was claimed was zero."

This argument fails to take into account that the agreement, in consideration of which $75,000 worth of stock was issued to Sullivan, embraced, not only the patent application of July 29, 1912, but also the obligation "to turn over to petitioner, without further compensation, all other applications for patents which he might have or thereafter acquire, or inventions which he might thereafter originate or perfect in the line of ticket-vending machines." This consideration was a continuing one. The original invention having failed, both as to title and as to operative value, Sullivan substituted for it the device covered by patent No. 1,145,818, without further compensation. This patent constituted the only substantial consideration received and enjoyed for the stock issued to Sullivan. It formed the foundation upon which respondent had built up its business. The Board of Tax Appeals found that the patent had an actual cash value of $75,000 when acquired, and that the stock issued to Sullivan in 1912, had a fair market value of $75,000 when issued, on March 1, 1913, and during the year 1914. The position of the Commissioner seems to us to be highly technical, and the rights of taxpayers are not to be determined on merely technical grounds. Rhode Island Hospital Trust Co. v. Commissioner (C. C. A. 1) 29 F.(2d) 339; First National Bank v. Commissioner (C. C. A. 8) 49 F.(2d) 70. The order of the Board of Tax Appeals is

Affirmed.